T.C. Memo. 2015-190

UNITED STATES TAX COURT

DONALD LEE DUNNIGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3702-14.                                    Filed September 28, 2015.

Donald Lee Dunnigan, pro se.

<u>Alicia H. Eyler</u>, <u>Julie L. Payne</u>, and Angela Foster (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $10,778 in petitioner's Federal income tax for 2009.  After concessions by petitioner, the remaining issue for decision is whether he must recognize discharge of indebtedness income as a result of settlement of his credit account with Swift Financial/M&I Bank FSB (Swift).  Unless otherwise indicated, all section

[*2] references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Washington when he filed his petition.

Petitioner is an appraiser and the sole proprietor of Donald Dunnigan Period House Appraisal (Dunnigan Appraisal). In 2008 Dunnigan Appraisal was in need of cashflow, and petitioner obtained a business line of credit for $50,000 from Swift with respect to Dunnigan Appraisal. The credit agreement that Swift drafted for Dunnigan Appraisal provided that "[petitioner], both individually and on behalf of * * * [Dunnigan Appraisal], jointly and severally promise[s] to pay us * * * all loans * * * and all other debts, obligations and liabilities of every kind and description, arising out of all account transactions authorized by * * * [petitioner]".

Over time petitioner received approximately $50,000 from the Swift line of credit, which he used to pay obligations of Dunnigan Appraisal. In 2009 petitioner was unable to pay back the borrowed funds in full, and he negotiated with Swift to pay $15,628 in settlement of the debt. Swift later reported on Form

**[*3]** 1099-C, Cancellation of Debt, that it had canceled petitioner's debt of $34,369.24 on September 28, 2009. It further indicated in box 5 of Form 1099-C that petitioner was not personally liable for repayment of the debt.

Petitioner and his wife filed for a legal separation in 2009 but were not divorced that year. His wife subsequently filed her 2009 individual income tax return, having elected a filing status of "married filing separately".

Petitioner, on the other hand, elected a filing status of "single" on his 2009 Form 1040, U.S. Individual Income Tax Return. He also reported a total of $68,360.95 of cancellation of debt income that consisted of three discharges of indebtedness from entities other than Swift. He did, however, include with his return a copy of the Form 1099-C issued by Swift and handwrote on it the following:

> PLEASE NOTE; SWIFT FINANCIAL INDICATED TO ME THAT I AM NOT LIABLE FOR REPAYMENT OF CANCELLED DEBT. I HAD EXPLAINED TO THEM THAT I HAVE A SERIOUS CANCER PROBLEM, AND THAT IM [sic] 76 YEARS OLD. THUS, THEY MARKED BOX 5 'NO'. THE LOCAL IRS OFFICE SUGGESTED I EXPLAIN THE SITUATION AT TIME OF FILING, AND FELT IT WOULD LIKELY COME UNDER 'HARDSHIP' RULES FOR APPROVAL.

**[*4]**                                   OPINION

The issue remaining for decision is whether petitioner had discharge of indebtedness income from Swift for 2009. Income from discharge of indebtedness (also called cancellation of debt) is included in the general definition of gross income. Sec. 61(a)(12). The concept of discharge of indebtedness income is that a taxpayer has realized an accession to income--to the extent that he has been released from indebtedness--because assets previously offset by the liability arising from the indebtedness have been freed. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987) (citing United States v. Kirby Lumber Co., 284 U.S. 1 (1931)).

Petitioner testified that he received the income from the Swift line of credit, and the burden of proof lies with him to show why the discharge of indebtedness income should not be taxable. See Rule 142(a). He first argues that Swift did not hold him personally liable for the repayment of the debt and it indicated this result on box 5 of Form 1099-C. Cancellation of debt income, however, may be realized without a taxpayer's personal liability for a debt. See, e.g., Gershkowitz v. Commissioner, 88 T.C. 984, 1006 (1987) (determining that taxpayers realized cancellation of debt income where a creditor discharged their nonrecourse loans in exchange for cash settlements). Moreover, petitioner did not establish that he had no obligation to repay the borrowed funds. Swift's credit agreement with

**[*5]** petitioner and Dunnigan Appraisal provided that he was individually and severally liable for repayment of the credit line, in direct opposition to the box 5 indication.

Petitioner also alleges that Swift and Internal Revenue Service (IRS) employees told him that "hardship" rules could apply in his case. However, he does not point to any legal authority that addresses a "hardship" exception to the taxability of discharge of indebtedness income. While there are exceptions to the recognition of such income, they do not appear to help petitioner's case. See, e.g., sec. 108(a) (excluding discharge of indebtedness from gross income in certain cases involving, inter alia, bankruptcy and insolvency); id. subsec. (e)(2) (same as to lost deductions); id. subsec. (f) (same as to certain student loan discharges); Landreth v. Commissioner, 50 T.C. 803 (1968) (creating a judicial exception that a guarantor does not realize discharge of indebtedness income upon the release of a contingent liability). The closest exceptions appear to be bankruptcy or insolvency, but the record does not show that petitioner was either bankrupt or insolvent in 2009.

Petitioner's reliance on alleged statements of Swift and IRS employees is also unpersuasive. A trial before the Court is a proceeding de novo, and our redetermination of a taxpayer's tax liability is based on the merits and not on any

**[\*6]** matters occurring before the notice of deficiency was sent.  Greenberg's

Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974).  Additionally,

administrative guidance by the IRS is not binding on the Government, nor can it

change the plain meaning of tax statutes.  See Miller v. Commissioner, 114 T.C.

184, 195 (2000) (addressing specifically IRS publications), aff'd sub nom.

Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002).

While we do not doubt that petitioner experienced hardship, it was not of a

kind that controls in this matter.  Petitioner received approximately $50,000 in

2009, paid back approximately $15,000, and--when his debt was discharged by

Swift--had an accession of income because he did not have to pay back the

remainder.  That income is taxable.

In reaching our decision, we have considered all arguments made, and, to

the extent not mentioned, we conclude that they are moot, irrelevant, or without

merit.

To reflect the foregoing,

Decision will be entered

for respondent.